### NASH v. WILLIAM M. CRANE CO.

(Supreme Court, Appellate Division, Second Department. December 2, 1910.)

1. MASTER AND SERVANT (§ 121*)—INJURIES TO SERVANT—SAFE PLACE TO WORK —COVERING SHAFTS.

   It is not negligence on the part of a master to fail to cover a shaft which clears the floor more than 7 feet, and would therefore be well above the heads of employés.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 229; Dec. Dig. § 121.*]

2. MASTER AND SERVANT (§ 107*)—INJURIES TO SERVANT—SAFE PLACE TO WORK —MASTER AS INSURER.

   A master is not bound to afford the safest possible place in which to work, nor to construct his premises so that an accident is impossible; but he fully complies with his duty if he furnishes a place such as reasonably prudent men would accept as a proper place in which to labor. Therefore a master was not negligent in maintaining a storeroom lighted by several windows and several electric lights, in which there was a pulley and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

shaft which ran about 7 feet above the ground, and was 14 inches away and 6 inches above bins in which supplies were kept.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 179, 200; Dec. Dig. § 107.*]

3. Master and Servant (§ 107*)—Injuries to Servant—Duty to Furnish Absolutely Safe Ladders.

There is no duty on a master to furnish an absolutely safe ladder; the only qualification being that under the labor law a ladder must be strong enough to sustain its burden. Therefore a master who furnishes a ladder with a cleat on its back is not negligent in furnishing supplies.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 181; Dec. Dig. § 107.*]

4. Master and Servant (§ 276*)—Injuries to Servant—Negligence—Proximate Cause of Injury—Evidence.

In an action against a master for personal injuries to a servant, which arose through the servant's handling a ladder so that it touched a rapidly revolving shaft and threw the ladder out of his hand, injuring him, evidence *held* not to show that the construction of the ladder was the proximate cause of the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 951; Dec. Dig. § 276.*]

5. Master and Servant (§ 128*)—Injuries to Servant—Negligence—Improper Use of Tools or Appliances.

A master has done his full duty to a servant when he supplies reasonably safe tools and appliances, and he cannot be expected to foresee that a servant may make improper and hasty use of them, which will result in his injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 256; Dec. Dig. § 128.*]

Appeal from Trial Term, Westchester County.

Action by Alexander J. Nash, Jr., against the William M. Crane Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Argued before HIRSCHBERG, P. J., and WOODWARD, RICH, JENKS, and THOMAS, JJ.

E. Clyde Sherwood (Edward J. Redington, on the brief), for appellant.

James W. Husted, for respondent.

WOODWARD, J. The plaintiff had been working for the defendant in its stove factory, for about eight years, but had only been engaged at the particular job of a stove mounter for about two weeks. In the course of his employment it appears that he had occasion to use some burners, and on the morning of the accident, August 29, 1907, not finding any of these burners near at hand, went to the drill presses near at hand, and, not finding any there, he asked his foreman about them, and was told, it is claimed, to go to the supply house, in a separate building, and to take a ladder which would be found there, and climb up to a certain bin, where these burners were stored, and procure such as were necessary. The plaintiff claims that he had never been in this particular building before, and that in going in there was only one electric light burning, and that the place was

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

more or less dark; that he found a ladder standing in one of the alleyways between the bins, and taking this ladder he attempted to place one end of it against the bin, so that he might climb up and get the burners, when a slat on the back side of the ladder caught in a rapidly revolving pulley, forcing the ladder from his hands, and causing it to fall to the floor with such force as to smash two of his toes. The shaft on which the pulley was located which did the injury was 8 feet 7¼ inches above the floor of the stockroom, and the pulley was 2½ feet in diameter, and was 6 inches above the top of the bin where the plaintiff was going for burners, and about 14 inches away from the bin.

It is obvious that there was no negligence on the part of the defendant in placing this shaft, which transmitted the power to the adjacent shop. It was well above the heads of those who were employed there, and the pulley cleared the floor by more than 7 feet. No claim is made, we believe, of any negligence in this respect; the claim being that the place was dark, so dark that the plaintiff could not clearly see the pulley, though it is admitted that he could see other objects in the room, and it is undisputed in the evidence that this pulley was turning rapidly, accompanied by that peculiar snapping noise which results from the contact of the belt splicing with the revolving pulley, so that any man in the possession of his senses of sight and hearing, and being in a strange part of a manufacturing plant, where he knew at least that there was a likelihood of moving machinery, owed some obligation to know the situation and to use the requisite care to protect himself. The evidence is undisputed that this so-called dark room had several windows, and that in addition to these windows there were at least four 16 candle power electric lights, one of which was burning at the time of the accident, and the others were within easy reach of the plaintiff. No reason is suggested why he could not have turned on these lights, if he had desired to do so. The room contained no hidden dangers—dangers that were not as obvious to the plaintiff as to any one else in the use of his faculties; and, the master having furnished plenty of electric lights to illuminate the room, it does not occur to us that any duty owed to the plaintiff in respect to a reasonably safe place in which to work had been neglected. The master is not bound to afford the safest possible place in which to work. He is not bound to construct his factory is such a manner that accidents are impossible. He fulfills his obligations under the law if he provides such a place as reasonably prudent men, having regard for their own safety, would accept as a proper place in which to labor; and tried by this test it cannot be said that the room where the plaintiff was called upon to go for supplies failed in this regard.

But it is urged that the ladder supplied was in some manner not adapted to the work, that it was longer than was necessary to reach the bin, and that by reason of this length, and the cleat which had been nailed across the back side of it, the accident was caused. There was uncontradicted evidence that there was another short ladder in this room—a stepladder, with a brace—that might have been used, and which would not have reached up to the revolving pulley, and no

reason is suggested why the plaintiff did not use this ladder. He appears to have had an opportunity to select a perfectly safe ladder. The master had afforded such a ladder; but the plaintiff took the first one he came to, and in trying to place the same it came in contact with a pulley, which he ought in the exercise of a reasonable degree of care to have known was there, and the accident resulted. There is no suggestion that the ladder had any defect, with the possible exception of the cleat nailed on the back of it; and this was as obvious to the plaintiff as it could have been to the defendant, and, so far as the evidence goes, this cleat may have been placed upon the ladder in question for some useful purpose. In any event, it was not negligent for the master to furnish a ladder, among others, with a cleat across the back of it; for there is no duty to furnish absolutely safe appliances of this simple character, except that under the provisions of the labor law a ladder must be strong enough to sustain its burden, and the fact that there was such a cleat on the ladder was notice to the plaintiff that it differed in this respect from an ordinary ladder, and called upon him to know whether this involved danger.

But the real question here is whether there was anything in the ladder furnished to the plaintiff, assuming it to have been the only one, in connection with the surroundings, which would have prompted a reasonably prudent man, before the accident happened, to anticipate danger. That is the real test, and it cannot be successfully contended that there was anything shown in the evidence in this case which would have suggested any special danger in the surroundings or in the appliances furnished. There was an ordinary stockroom in a manufacturing plant, amply supplied with windows, doors, and electric lights; there was a line shaft, with a pulley, far above the heads of employés; and there was a ladder 8 feet in length, with one at least much shorter, and which was commonly used to reach the bins on either side of alleyways. Who would have anticipated that a man thoroughly familiar with the plant and its moving machinery would have gone into that room and attempted to make use of that ladder in such a manner as to produce this accident? Is it necessary that the master, having supplied proper materials and a proper place to work, shall follow each and every employé around a factory to see that he makes a proper and safe use of the materials furnished? We think not. The master had done his full duty in the premises in furnishing a reasonably safe place in which to work, and reasonably safe tools and appliances, and if the plaintiff, heedless of his surroundings, made an improper use of the place and the appliances, the defendant is not to be blamed.

The judgment and order appealed from should be reversed, and a new trial granted; costs to abide the event. All concur.